EDWARD RAROHA, PLAINTIFF-APPELLANT, v. EARLE FINANCE CORP., INC., A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued April 4, 1966—Decided June 6, 1966.

Mr. *Ira Rabkin* argued the cause for appellant (*Messrs. Molotsky, Rabkin & Gross,* attorneys).

Mr. *Arthur Montano* argued the cause for respondent (*Messrs. Kisselman, Devine, Deighan & Montano,* attorneys; Mr. *Arthur Montano* on the brief).

The opinion of the court was delivered

PER CURIAM. Judge Schalick of the Superior Court, Law Division, found that a general release executed by the plaintiff, Edward Raroha, barred him from pursuing his personal injury claim against the defendant, Earle Finance Corp., Inc. (Earle). A judgment was entered dismissing plaintiff's com-

plaint, and we certified his appeal on our own motion prior to argument in the Appellate Division.

Plaintiff commenced this action to recover damages resulting from a purported assault and battery. The complaint alleged that on March 30, 1962, plaintiff was unlawfully attacked by defendant's agent, Benjamin Bruno, who was attempting to collect an overdue loan made by Earle to plaintiff.[1] Earle filed an answer denying liability and asserting as an affirmative defense that the action was barred by a release executed by the plaintiff. Plaintiff filed a reply seeking to void the release on the grounds of duress, fraud, misrepresentation, incapacity, mistake and illegality. An amendment to the reply further asserted that the release was not intended to cover the claims for which suit was brought.

On application of the defendant the trial court ordered that the validity of the release be determined at a separate trial to be held before any consideration of the merits of plaintiff's claim for assault and battery. This trial was held before the judge, sitting without a jury, where it was shown that the plaintiff, age 39, was involved in an altercation with Bruno on March 30, 1962, resulting in an injury to his right arm. Plaintiff signed a complaint in the Camden Municipal Court charging Bruno with assault and battery, and the matter was originally scheduled for hearing on April 17, 1962. Prior to that date plaintiff asked an attorney, Joseph Asbell, to represent him in a civil action to recover damages for the injuries sustained. The attorney told the plaintiff he could not take the case because he was the city prosecutor. However, he advised plaintiff to have a professional photographer take pictures of his arm. Plaintiff followed this advice and the resulting pictures were presented to the magistrate on April 17.

---

[1] Benjamin Bruno was also named as a defendant in the complaint. We have been informed that he filed no answer and a default judgment was entered against him. However, we understand that the default was vacated and proceedings against him were stayed until disposition of this appeal.

Bruno appeared at the hearing, represented by an attorney, William Reifsteck, who had been retained by Earle. Testimony was taken and the matter was then adjourned to May 7, 1962, to give Bruno the opportunity to subpoena an additional witness. On May 7 further testimony was taken after which the matter was adjourned to June 4, 1962. Between May 7 and June 4 there was a series of negotiations between the parties in which they sought to reach a settlement for the injuries sustained by the plaintiff. On June 4 the plaintiff withdrew his charges against Bruno and on the following day he went to Reifsteck's office. There plaintiff received a check for $100 and his indebtedness to Earle (about $200) was cancelled. At that time he executed two general releases, one running to Bruno and one to Earle, discharging them from all liability arising from the occurrence on March 30, 1962.

After his injury on March 30 plaintiff made several visits to his family physician, Dr. Marcarian. In a written report dated April 14, 1962, Dr. Marcarian described plaintiff's condition as follows: "[I]njured right arm with ruptured blood vessels around the elbow region & very marked swelling & trauma." By early June plaintiff's condition had apparently greatly improved and in another written report dated June 2, 1962, Dr. Marcarian stated: "Examination of [plaintiff's] right elbow reveals that he has recovered completely from the injury sustained on March 30, 1962." At the trial plaintiff testified that at the time he signed the releases he still felt a "tinging" in his arm. However, he further testified that Dr. Marcarian assured him that the "tinging" was not serious and resulted from a stretching of the ligaments, nerves and muscles, which stretching would gradually disappear. Plaintiff was never examined by a physician selected or employed by Bruno or Earle, and his total medical bills prior to June 4, 1962 apparently totaled less than $100.

Despite the optimistic prediction of his physician, the condition of plaintiff's right arm did not improve but in fact worsened. On January 21, 1963, plaintiff was examined by Dr. Leopold David who found that his ability to use his arm

was impaired by muscle atrophy resulting from damage to the ulnar nerve. In response to a hypothetical question, Dr. David stated that the injury was causally connected to the altercation of March 30 and that the tingling felt by plaintiff about the time he signed the release was a manifestation of the ulnar nerve involvement. According to plaintiff's testimony the impaired condition of his right arm still existed at the time of the trial.

Plaintiff seeks to set aside the release to Earle executed on June 5, 1962, on the ground that he is a person of low intelligence and poor comprehension who did not understand that the instrument he was signing was a release which would bar all future claims arising from the episode with Bruno. He further alleges that defendant's attorney, Reifsteck, was guilty of overreaching in procuring the execution of the release.

In refusing to rescind the release the trial court found no evidence that plaintiff's mental capacity was substandard or impaired:

"The Court finds after observation of the plaintiff in this courtroom, that he is a man of average intelligence, alert, responsive to all questions, has that inherent skepticism in the answering of questions and dealing with all matters that come with the normal conduct in dealing with matters of this kind, and the Court finds and believes, that he is Mr. Average Man, who can well take care of himself, in any situation in reference to business matters."

The trial court also found that there was no fraud, overreaching or misrepresentation by the defendant and that the release was executed with the "full understanding and * * * complete knowledge on the part of all parties as to its intent and purposes, and its legal effect." Our review of the record satisfies us there was ample evidence on which the trial judge could have based his findings. See *State v. Johnson,* 42 *N. J.* 146, 162 (1964).

Plaintiff argues that because the release does not refer specifically to an action for physical injuries, it was not intended to bar the present action. This contention is frivolous.

The release by its terms bars "all manner of action and actions, cause and causes, * * * trespasses, damages, * * * claims and demands whatsoever." Moreover, at the end of the instrument there is a recitation that it was "Especially" intended to bar "any claim" arising from the events which occurred on March 30, 1962. We agree with the trial court's finding that in accepting the check for $100 and the cancellation of his note the plaintiff fully understood that he was making a final settlement of all his claims against the defendant.

■ It may be that plaintiff's injuries are now more serious than he believed them to be when he signed the release. However, in the absence of fraud, misrepresentation or overreaching by the releasee, in the absence of a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the release is binding and that the releasor will be held to the terms of the bargain he willingly and knowingly entered. *Peter W. Kero, Inc. v. Terminal Construction Corp.*, 6 *N. J. 361, 369* (1951). See also *Spangler v. Kartzmark*, 121 *N. J. Eq.* 64 (*Ch.* 1936); *Reinhardt v. Wilbur*, 30 *N. J. Super.* 502 (*App. Div.* 1954). Because a careful scrutiny of the record has revealed to us no basic unfairness in the circumstances attending the execution of the release, we are not disposed to reconsider whether the equitable grounds which justify the rescission of a release should be expanded.[2]

---

[2] For a general discussion of the problems relating to settlement agreements in personal injury cases see: Dobbs, "Conclusiveness of Personal Injury Settlements: Basic Problems," 41 *N. C. L. Rev.* 665 (1963); Malina, "Unilateral Mistake of Fact in Personal Injury Releases," 10 *Clev.-Mar. L. Rev.* 70 (1961); Havighurst, "Problems Concerning Settlement Agreements," 53 *Nw. U. L. Rev.* 283 (1958); Andrews, "The Personal Injury Release," *Ins. L. J.*, *p.* 212, April 1965; Havighurst, "The Effect Upon Settlements of Mutual Mistake as to Injuries," 12 *Defense L. J.* 1 (1963); Note, 39 *N. D. L. Rev.* 421 (1963); Note, 19 *U. Pitt L. Rev.* 111 (1957). For a collection of cases see *Annotation*, "Avoidance of release of personal injury claims on ground of fraud or mistake as to the extent or nature of injuries," 71 *A. L. R.* 2d 82 (1960).

The judgment of the Superior Court, Law Division, dismissing plaintiff's complaint is affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.