229 N.J. Super. 490 (1989)
551 A.2d 1054
SANTA APONTE AND DENIS APONTE, PLAINTIFFS-RESPONDENTS,
v.
WALTER G. WILLIARD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 6, 1988.
Decided January 6, 1989.
*491 Before Judges ANTELL and DREIER.
Ozzard, Wharton, Rizzolo, Klein, Mauro, Savo & Hogan, attorneys for appellant (Michael S. Feldman and Arthur D. Fialk, on the brief).
Nemergut & Duff, attorneys for respondents (Paul J. Nemergut, III and Howard Duff, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals on leave granted from an order setting aside a prior order dismissing this automobile accident case on the basis of a reported settlement. The chronology is simple to state. The accident, a rear end hit, occurred March 24, 1987. Plaintiff filed her complaint just a few weeks later on May 11, 1987. An answer was filed in July, and after some discovery liability was stipulated by defendant. The matter was reported settled on February 28, 1988, and an order of that date dismissed the case with prejudice.
In July 1987, plaintiff had obtained a physician's report from Gautam Sehgal, M.D., a neurologist. In his report the doctor noted objective symptoms of neck and back pain with an "[i]mpression [of] post-traumatic cephalalgia [headaches]; [p]ost-traumatic cervical myofibrositis syndrome and [p]ost-traumatic lumbosacral myofibrositis syndrome [neck and lower back muscle inflamation]." Dr. Sehgal's prognosis was that plaintiff "has suffered significant injuries of a permanent nature to her neck, back and shoulder as a result of the accident. It is probable that she may have repeated flareups of her symptoms in the future."
*492 At about the same time plaintiff's treating chiropractors, John R. Allen and Ira A. Shapiro, prepared a report stating her complaints to be inter alia, headache, neck pain, upper back pain, restriction of neck motion, head and shoulders "feel tired and heavy;" and pain radiating into left shoulder. Their X-rays showed a probable disc bulge at C6-C7, from which they concluded that plaintiff had suffered a "traumatic flexion/extension injury of the cervical and thoracic spine ... resulting in a facetal separation and avulsion at C6-C7 spinal levels." These significant findings, therefore, related primarily to the neck, with only passing reference to the upper back and no injury to the lower back. The chiropractor further noted that "positive orthopedic findings along with the positive x-ray findings, the patient's symptomatology, and loss of range of motion, point to a poor recovery." Notwithstanding these reports, plaintiff, a legal secretary, settled her case for the sum of $10,000 on February 26, 1988.
Three days later, plaintiff came under the care of her family doctor, Phyllis Hurwitz, M.D., for progressive low back pain radiating down her right side to her right leg. Doctor Hurwitz's diagnosis was a spasm due to a prolapsed disc at L4-L5, causing severe low back pain. Plaintiff was hospitalized from March 9, 1988 through March 23, 1988. On April 8, 1988, she was reexamined by the neurologist, Dr. Sehgal. In addition to Dr. Sehgal's previous impressions, he added "herniated disc disease L3-4 on right (MRI [magnetic resonance imaging] results)."
On or about April 21, 1988, less than two weeks after Dr. Sehgal's reexamination, and less than two months after the settlement, plaintiff moved to set aside the settlement, stating that had she known the serious nature of her condition prior to the settlement, she would not have settled the matter for $10,000. Her counsel's certification similarly states that plaintiff was unaware of the serious nature of her condition and that had plaintiff been so aware, counsel would not have advised her to settle her claim.
*493 Following the settlement, plaintiff neither signed nor delivered a release, nor had the settlement funds been tendered prior to the motion to vacate.
There is no question that "settlement of litigation ranks high in our public policy," Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App.Div. 1983), certif. den. 94 N.J. 600 (1983), quoting Jannarone v. W.T. Co., 65 N.J. Super. 472, 476 (App.Div. 1961), certif. den. 35 N.J. 61 (1961). With this principle in mind, we approach the judge's decision to set aside this settlement.[1] The settlement of a law suit has three aspects: the initial agreement, which is a contract between the parties; the order of the court dismissing the suit, which is subject to the court rule controlling the relief from an order or judgment, R. 4:50-1; and the delivery of a release, a document with independent legal significance.
The short time periods involved in this case, the asserted mutual mistake of the parties concerning the extent of plaintiff's injuries, and the fact that no release had been delivered or payment made, distinguish the case before us from most other cases decided on this point.
As noted in Pascarella v. Bruck, supra:
An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of `fraud or other compelling circumstances,' should honor and enforce as it does other contracts. Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974). [190 N.J. Super. at 124-125].
Yet most contracts are subject to rescission for a mutual mistake made by the parties as to a material underlying fact. H. Prang Trucking Co. Inc. v. Local U. No. 469, 613 F.2d 1235, 1239 (3rd Cir.1980). But in this regard we must recognize the special nature of a contract to settle an unliquidated claim. The parties do not know how the plaintiff's injury might *494 progress, and they settle the claim based upon each side's best estimate of the probabilities and an acceptable value to be given or received. Bauer v. Griffin, 104 N.J. Super. 530, 546 (Law Div. 1969), aff'd o.b. 108 N.J. Super. 414 (App.Div. 1970), certif. den. 56 N.J. 245 (1970). There is no question that the mere change of mind by one party concerning the value of known injuries is an insufficient ground to set aside a settlement agreement. Pascarella v. Bruck, supra, 190 N.J. Super. at 126; Honeywell v. Bubb, supra, 130 N.J. Super. at 137. As noted in Pascarella:
It is only where the inadequacy of consideration is grossly shocking to the conscience of the court that it will interfere. [190 N.J. Super. at 125].
Where the agreement has been memorialized by a court order, the matter passes from one which requires merely the satisfaction of contract law, to one in which a party must demonstrate the presence of one of the grounds specified in R. 4:50-1. The case before us could fall under the grounds of "mistake, newly discovered evidence," or "any other reason justifying relief."[2]
The maximum protection afforded a defendant against a later claim based upon injuries more severe than those earlier assumed by the parties is not to be found in contract law or even the court rules. The protection, insofar as it is available at all, is inherent in the release. In New Jersey a release provides, subject only to questions of capacity or other equitable grounds for vacation, an absolute bar to claims that injuries were in fact more serious than those assumed by the parties at the time of settlement. Raroha v. Earle Finance Corp. Inc., 47 N.J. 229, *495 234 (1966); Bauer v. Griffin, supra; Reinhardt v. Wilbur, 30 N.J. Super. 502 (App.Div. 1954).[3]
As stated by the Supreme Court:
It may be that plaintiff's injuries are now more serious than he believed them to be when he signed the release. However, in the absence of fraud, misrepresentation or overreaching by the releasee, in the absence of a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release and in the absence of any other equitable ground, it is the law of this State that the release is binding and that the releasor will be held to the terms of the bargain he willingly and knowingly entered. [Raroha v. Earle Finance Corp. Inc., 47 N.J. at 234].
We therefore hold that where no release has been signed and delivered, where no payment of the settlement funds has been accomplished, and a timely motion has been made by a plaintiff or defendant to be relieved from the effect of an order of dismissal or settlement agreement, the trial court in its discretion may enforce or set aside the agreement as the facts may warrant. In the case before us Judge Stroumtsos properly exercised his discretion under R. 4:50-1. He considered the evidence of lumbar disc involvement theretofore unknown to the parties, plaintiff's immediate application for relief from the February order before any release was signed or compensation paid, and the evident lack of prejudice to defendant. On these facts any other decision would have been manifestly unjust.
AFFIRMED.
NOTES
[1] We note the actual order was signed by the Assignment Judge, although the oral decision was rendered by Judge Stroumtsos, the trial judge who initially had received the report of the settlement.
[2] A claim for "mistake" or "newly discovered evidence" would not be barred until expiration of the one-year limitation for the making of the motion set forth in R. 4:50-2. But in Bauer v. Griffin, supra, 104 N.J. Super. at 539-540, Judge Fritz determined that a mistake regarding the extent of injuries would not be barred by the one-year limitation, but would be considered falling under "any other reason justifying relief." Thus even a claim made five years after the fact could be considered, if the claim were not extinguished by a release.
[3] As noted in Bauer v. Griffin, several other states even permit a release to be set aside if the nature of the injuries had been misperceived by the parties. 104 N.J. Super. at 543. Judge Fritz there noted, however, that the cited out-of-state cases involved previously unknown and anatomically different injuries from those recognized or realized at the time of the judgment or release. Id. at 544. The Appellate Division affirmance in Bauer, substantially for the reasons stated by Judge Fritz, revealed a gloss on the release rule, since the settlement had involved an infant. While the Appellate Division did not overturn the decision, the court clearly stated that the motion to vacate the order of dismissal (notwithstanding the release) was discretionary in a case involving an infant, but that the trial judge's exercise of discretion would be upheld.