DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

## AT MARCH TERM, 1876.

---

MATTHIESSEN & WEICHERS REFINING COMPANY, PLAIN-
TIFFS IN ERROR, v. McMAHON'S ADMINISTRATOR, DE-
FENDANT IN ERROR.

1. Delivery to validate a contract of sale under the statute of frauds,
   must be a delivery under the contract, and in pursuance of it.
2. A contract for the sale of goods for the price of $30, or upwards, by
   parol, whereby the vendor sells to the purchaser goods to the value
   of an existing debt due from him to the purchaser in payment thereof,
   is not valid under the statute of frauds; there being no delivery of the
   goods, or any part thereof, and no receipt or voucher given, or actual
   credit made in discharge of the debt.   *Walker* v. *Nussey*, 16 *M. & W.*
   302, approved.
3. If a contract for the sale of goods, made by a person alleged to be a
   lunatic, be invalid when made, for non-compliance with the statute of
   frauds, and the buyer relies on a subsequent delivery to validate the
   sale, a charge submitting to the jury as the question for determina-
   tion, " whether the seller was competent to make the bargain, and, if
   so, whether his competency continued so as to enable him to complete
   and perfect the bargain by delivery," is correct.
4. The general rule is, that contracts with lunatics and insane persons
   are invalid, subject to the qualification that a contract made in good
   faith with a lunatic for a full consideration, which has been executed

Matthiessen & Weichers Refining Co. v. McMahon's Adm'r.

without knowledge of the insanity, or such information as would lead a prudent person to the belief of the incapacity, will be sustained.

5. The after-occurring insanity of a principal operates, *per se*, as a revocation or suspension of the powers of his agent, except in cases where a consideration has been previously advanced in the transaction so that the power became coupled with an interest, or where a consideration of value is given by a third person dealing with the agent, relying on his apparent authority in ignorance of the principal's incapacity.

6. The cases on the subject of the validity of contracts with lunatics examined.

This was an action of trover against the plaintiffs in error. The cause was tried at Hudson Circuit, and resulted in a verdict for the plaintiffs below. Judgment having been entered thereon, this writ of error was thereupon sued out.

For the plaintiffs in error, *R. Gilchrist.*

Contra, *J. Linn.*

The opinion of the court was delivered by

DEPUE, J.   The controversy in this case was between the administrator of McMahon and the Refining Company with respect to the title to certain property—barrels and cooperage stock.

The defendants claimed property in the goods under an alleged purchase from McMahon, at an interview between him and the president of the company on the 2d of December, 1871.

There was some testimony of a sale of the same property to the defendant, negotiated by one Shandly, under a power of attorney from McMahon, but as the title relied on at the trial was mainly under the agreement of the 2d of December, and as the questions raised by the bill of exceptions are common to both transactions, the case will be treated in respect to the agreement entered into at that time.

At the time of the interview of the 2d of December, McMahon was indebted to the company in the sum of about $11,000.   It will be assumed that a bargain was then con-

cluded that McMahon should sell the goods to the company in payment of his indebtedness, and that the property in them should pass to the company immediately.

No note or memorandum of the contract of sale in writing was made and signed ; but it was contended by the defendant that the requirements of the statute of frauds had been complied with by a delivery and acceptance of the goods, or payment of the contract price within the meaning of the statute.

Exceptions were taken to the charge of the court on both these points.

*First.* The goods which were the subject matter of the contract were, in fact, delivered to the defendants by Shandly as agent of McMahon, between the 27th of December and the 5th of the succeeding January.

The judge charged the jury that a delivery to validate a contract within the statute of frauds must be a delivery under the contract, and in pursuance of it. This instruction was correct. Delivery and acceptance of the goods sold, or some part of them, or part payment of the contract price, whether at the time of making the contract, or subsequently, are the acts of part performance, which are prescribed by the statute as necessary to the validity of a contract of which no written evidence has been provided. To have this effect the delivery and acceptance, or payment, must obviously be referable to, and be in part execution of the contract which is thereby to be made valid. *Brown on Frauds,* § 326.

*Second.* There was no proof that any receipt or voucher in discharge of McMahon's indebtedness was given, or any entry of payment made in the defendant's books. In the absence of such testimony the judge charged that there was no evidence of earnest given or part payment to take the case out of the operation of the statute of frauds.

The evidence in the cause, the request to charge, and the charge as given, present the question, whether an agreement in parol by the seller to sell, and the buyer to buy goods to the value of an existing debt, and thereby satisfy and pay the debt is a valid sale within the statute, though there be no

delivery of the goods, and no receipt or voucher be given as evidence of the discharge of the indebtedness.

The charge of the judge was in accordance with the decision of the Court of Exchequer, in *Walker* v. *Nussey*, 16 *M. & W.* 302, in which it was held that an agreement to purchase, where it was part of the contract of sale that a debt due from the seller was to be part payment of the price, was not in compliance with the statute, no receipt being given, or actual credit made in discharge of the debt.

It was contended that the doctrine of *Walker* v. *Nussey* has been overruled by the cases decided under Lord Tenterden's Statute of Limitations Act, and also by the numerous decisions to the effect that where there is mutual indebtedness, a verbal agreement that one debt shall be payment of the other, operates as a satisfaction.

None of these cases are in conflict with the decision in *Walker* v. *Nussey*. Lord Tenterden's act left the effect of payment as evidence of a new promise as it was before the act was passed. *Cleaves* v. *Jones*, 6 *Exchq.* 573. And the fact of a payment on account, may be proved by the oral admission of the party, or by any proper evidence. *Angel on Lim.*, § 244. In cases within the statute of frauds, actual payment, as a matter of fact, may be proved by the same kind of evidence. In the leading case on the subject of the extinguishment of mutual debts by a parol agreement that one shall be payment of the other, the principle on which that effect is given to the agreement of the parties, is correctly stated by Allen, J., to be, that " the mutual promises are regarded as the execution of the accord, the satisfaction of the original contract contemplated by the parties," which is " not required by any law to be in writing." *Davis* v. *Spencer*, 24 *N. Y.* 390. As was said by Grover, J., in commenting on this case, this doctrine has no application to the statute of frauds, for the reason that the statute makes void the entire agreement, where there is nothing but mere words. *Mather* v. *Allen*, 3 *Keyes* 492.

*Walker* v. *Nussey* has been adopted without dissent in the text books. *Benjamin on Sales* 139 ; *Story on Sales* 273, *a* ; 1 *Chitty on Contracts* 564 ; 3 *Parsons on Contracts* 52. Substantially the same doctrine was held by the Supreme Court of New York, in a case earlier in point of time, (*Artcher* v. *Zeh*, 5 *Hill* 200 ;) and it has been re-affirmed in cases decided since. *Ely* v. *Ormsby*, 12 *Barb.* 570 ; *Clark* v. *Tucker*, 2 *Sandf. Sup. Ct.* 157 ; *Brabin* v. *Hyde*, 32 *N. Y.* 519 ; *Teed* v. *Teed*, 44 *Barb.* 96 ; *Mather* v. *Allen*, 3 *Keyes* 492 ; *Walruth* v. *Ritchie*, 5 *Lansing* 362.

In *Mather* v. *Allen*, as decided in 33 *Barb.* 543, an agreement of this kind was held to be in fulfilment of the statute, on the ground that it was, in fact, payment and extinguishment of the debt. This case was reversed in 3 *Keyes*. It is true that the debt so sought to be dealt with, was a debt due to the agent. But that circumstance was not, in the judgment of reversal, deemed to have any effect. The reversal was on the broad ground that mere words will not satisfy the requirements of the statute ; that, in addition thereto, some act of the parties is required, showing, by such act, their assent to the contract.

An effort was made to distinguish this case from the cases cited, in the fact that, in some of them at least, the agreement that the debt should be paid by the goods sold, was not wholly *in praesenti*, and it was contemplated by the parties that something should be done in the future, such as a credit entered, or endorsement made ; whereas, in the present case, the testimony showed that the agreement was, that the goods sold should operate at once as payment, without qualification or contingency. In *Dow* v. *Worthen*, 37 *Vt.* 108, observations to this effect were made upon *Walker* v. *Nussey*. I see no efficacy in this distinction. The principle which underlies the cases cited, and on which they rest is that, where no written evidence of the contract is made, and payment is relied on as the compliance with the statute, mere words are not sufficient ; some act in part performance, or part execution of the contract, such as the surrender or cancellation of

the evidence of the debt, or a receipt or discharge of the in-debtedness, is necessary to make the contract valid.

This, in my judgment, is the correct exposition of the statute, and is in unison with the spirit and reason of the enactment. The language is, that the buyer shall "accept part of the goods so sold, and actually receive the same, or give something in earnest, or in part payment." I concur in the observations of Gardner, J., that "the acts of part payment, of delivery and acceptance mentioned in the statute, are something over and beyond the agreement of which they are part performance, and which they assume as already in existence." *Shindler* v. *Houston*, 1 *Comstock.* 264.

It is not proposed to discuss at length the doctrine of constructive delivery and acceptance under contracts within the statute. Refinements and subtle distinctions have been made on the language of the act, which need but a step further to operate practically as a setting aside of the statute.

The principal modern cases in favor of the doctrine of acceptance and actual receipt, though the goods, by agreement, are to remain in possession of the vendor, are, *Beaumont* v. *Brengeri*, 5 *C. B.* 301 ; *Saunders* v. *Topp*, 4 *Exchq*, 390 ; and *Marvin* v. *Wallis*, 6 *E. & B.* 726.

In *Marvin* v. *Wallis*, the plaintiff sold a horse to the defendant for a price above £10. The bargain was for immediate delivery, but the plaintiff requested the defendant to lend the horse to him, to which the defendant assented, and the plaintiff kept the horse. The jury, on the question being left to them, found that the bargain was completed before the arrangement as to the loan took place. A verdict for the plaintiff for the price of the horse was sustained. The court put their opinion expressly on the ground of the finding of the jury that the bargain was complete, and after that the horse was loaned to the vendor for a specific purpose, and that although the possession of the vendor was apparently the same before and after the sale, in reality its character was changed, and he subsequently held as bailee of the purchaser. The act of making a bailment of the property to the vendor,

after the bargain was concluded, was considered as sufficient evidence of the exercise of ownership to warrant a jury in finding an acceptance and actual receipt.

In commenting on *Marvin* v. *Wallis* and *Beaumont* v. *Brengeri*, Blackburn, J., in *Cusack* v. *Robinson*, 1 *B. &. S.* 307, says that in both cases " there appear to have been acts subsequent to the agreement, which changed the nature of the possession" —in other words, there was a dealing with the property by the purchaser in such a way as to be inconsistent with any other idea than that of ownership. This remark is equally applicable to *Saunders* v. *Topp*. It is only in this aspect that these cases—especially *Marvin* v. *Wallis*—are consistent with the spirit of the statute. In that view, the act of the purchaser indicative of ownership is to be regarded as part execution of a contract already in existence—the " something besides," which Pollock, C. B., in *Walker* v. *Nussey*, declares the statute requires in addition to the contract.

As the question was presented in the court below, the charge of the judge was correct.

*Third*—Exception was taken to the charge of the court as to the effect of the insanity of a contracting party on his contracts.

The goods, in fact, were delivered into the possession of the defendants by Shandley, the superintendent of McMahon's business. The effect of this delivery was met by the plaintiff by testimony that McMahon was incapable of transacting business during the time of the delivery, by reason of insanity. There was evidence that the deceased exhibited symptoms of a disordered intellect as early as the commencement of the delivery of the goods, which continued until his death.

The judge having charged that there was no evidence of part payment, to make the contract good within the statute of frauds, and that its validity was dependent on a delivery and acceptance of the goods sold, or of some part thereof, submitted as the question for the jury whether McMahon was competent to make the bargain, and, if so, whether his competency continued so as to enable him to complete and per-

fect the bargain by delivery. This presentation of the question, as well as the instruction that the burden of proving the mental incapacity of the deceased, was on the plaintiff, and that the plaintiff must satisfy the minds of the jury, by the proof he adduces of that fact, were correct.

The instruction was, that the contracts of lunatics and insane persons were invalid, and not binding, with a qualification that if Mattheissen, acting as the agent of the company, was dealing with McMahon or his agent in the ordinary course of business, in good faith, without any knowledge of the insanity or mental disturbance of McMahon, and without the knowledge of such circumstances as would put a reasonably prudent man upon inquiry, made the bargain in good faith, then that would be a good bargain, and neither McMahon nor his representative could set up the insanity against it. Exception was taken to the refusal of the judge to add a direction that nothing but imposition on an insane person will avoid his contract.

The instruction as given is in accord with the principle established by the modern English cases and the decisions of our courts, as the general rule in dealing with the contracts of lunatics. *Yauger* v. *Skinner*, 1 *McCarter* 389; *Eaton* v. *Eaton*, 8 *Vroom* 108; *Molton* v. *Camroux*, 2 *Exchq.* 487; *S. C.*, 4 *Ib.* 17; *Beavan* v. *McDonell*, 9 *Ib.* 309; *Elliott* v. *Ince*, 7 *DeG.*, *M. & G.* 475.

There is a class of cases such as *Baxter* v. *Earl of Portsmouth*, 2 *C. & P.* 178, in which imposition upon a lunatic—advantage taken of his mental infirmity—is held to be an essential ingredient of the defence. But these are cases of contracts for necessaries—contracts which lunatics, known to be such, are capable of entering into, and are exceptions to the general rule. Other contracts with lunatics not strictly for necessaries, which have been fully executed, and on which a consideration of benefit to the lunatic has been given, may be within the reason of this exception, where the transaction is shown to be perfectly fair and reasonable, at least, so far as to allow the recovery back of the consideration given, or to

prevent a rescission by the lunatic or his representatives, without restoring the consideration, whenever a restoration is practicable. The liability of the lunatic in such cases is upheld, not on the ground of the contract, but on the fact that the lunatic has received and enjoyed an actual benefit from the contract. This view is advanced by Pollock, C. B., in *Gore* v. *Gibson*, 13 *M. & W.* 626, and by Redfield, C. J., in *Lincoln* v. *Buckmaster*, 32 *Vt.* 658. On this principle, *Brown* v. *Jodrell*, 3 *C. & P.* 30; *Dane* v. *Kirkwall*, 8 *Ib.* 675; *Niell* v. *Morley*, 9 *Vesey* 478; *Selby* v. *Jackson*, 6 *Beavan* 192 ; and the observations of Shaw, C. J., in *Arnold* v. *Richmond Iron Works*, 1 *Gray* 434, may be reconciled with the other cases.

In *Eaton* v. *Eaton*, the court treated the effect of the consideration given as overcome by proof of imposition and actual fraud in obtaining the conveyance. But this case is not within any of these exceptions. The defendants did not part with any money or consideration of value under this contract. They proposed merely a credit of the contract price on an existing indebtedness, which was rendered nugatory by the operation of the statute of frauds.

The general rule, which must govern this case, is, that absence of knowledge of the insanity of the party, as well as fairness in other respects, must concur to give validity to a contract with a lunatic. Knowledge or information, such as would lead a prudent person to the belief of the incapacity, is such evidence of bad faith as will avoid the contract. *Lincoln* v. *Buckmaster*, 32 *Vt.* 652. In *Yauger* v. *Skinner*, the rule is stated by Chancellor Green to be, "that if the proof be clear that an executory contract to purchase was made in good faith, and for a full, fair price, when the lunacy of the vendor was neither known nor suspected, and that the contract was executed on the part of the purchaser without knowledge or belief of the existence of the incapacity of the grantor, the contract will be upheld." In *Elliott* v. *Ince*, Lord Cranworth states the result of the authorities to be, " that dealings of sale and purchase by a person apparently sane, though subsequently found to be insane, will not be set aside against

those *who have dealt with him on the faith of his being a person of competent understanding.*" In *Price* v. *Berrington,* 7 *Hare* 402, Vice-Chancellor Shadwell says: "I do not understand it to be denied, that if the party treating with the lunatic knew of the lunacy, that is a fraud." In *Molton* v. *Camroux,* as reported in 2 *Exchq.* 501, Pollock, C. B., says: "The rule, as laid down by Littleton and Coke, has, no doubt, in modern times been relaxed, and unsoundness of mind would now be a good defence, if it could be shown that the defendant was not of capacity to contract, and the plaintiff knew it." In *Beavan* v. *McDonell,* 9 *Exchq.* 309, the action was by a lunatic to recover back a deposit made on a contract to purchase lands. To a plea alleging receipt of the money under the contract, the plaintiff replied, that when the contract was made, and money paid, he was a lunatic and incapable of contracting, and that the contract was not of any benefit to him, and averred that the defendant, at the time, &c., had notice. The defendant rejoined that neither the vendors nor the defendant, when the plaintiff made the contract, or paid the money, " knew that he was a lunatic, or of unsound mind, and incapable, by reason of unsoundness of understanding the meaning of a contract, but made the said contract with him fairly and in good faith, believing that he was able to understand the same." In none of the pleadings was any allusion made to imposition or advantage taken of the lunatic in the bargain. The defence was made solely on the ground of unsoundness of mind and knowledge of that fact by the opposite party ; and by the rejoinder, an issue was tendered on the averment of knowlege. On demurrer to the rejoinder the pleadings were held to be good. The case was afterwards tried on that issue, and resulted in a verdict for the plaintiff, which was sustained, as appears by the report of the case in 10 *Exchq.* 183.

In *Gore* v. *Gibson,* 13 *M. & W.* 623, to an action against an endorser of a bill of exchange, the defendant pleaded that when he endorsed the bill he was so intoxicated, and thereby so entirely deprived of sense, understanding and the use of

his reason as to be unable to comprehend the meaning, nature or effect of the endorsement, or to contract thereby, of which the plaintiff, at the time of the endorsement, had notice.   On demurrer it was contended that the plea, to be good, should have averred that the intoxication was procured by the plaintiff, or that he took advantage of it.   The court nevertheless held the plea to be good.   In *Matthews* v. *Baxter*, *L. R.*, 8 *Exch.* 132, the plea was in the same form.

The instruction given without the addition prayed for, was as favorable to the defendants as the facts would warrant.

The instruction that the agency of Shandly was revoked by the insanity of his principal, as qualified by the passage above quoted, was correct.

Notwithsanding the declaration of Chancellor Kent, (2 *Kent* 645,) "that the better opinion would seem to be that the fact of the existence of the lunacy must have been previously established by inquisition, before it could control the operation of the power," the weight of authority, as well as sound reasoning, lead to the conclusion that the after-occurring insanity of the principal operates, *per se*, as a revocation or suspension of the agency, except in cases where a consideration has previously been advanced in the transaction which was the subject matter of the agency, so that the power became coupled with an interest; or where a consideration of value is given by a third person, trusting to an apparent authority in ignorance of the principal's incapacity.   *Story on Agency*, § 481; *Bunce* v. *Gallagher*, 5 *Blatch. C. C.* 481; *Davis* v. *Lane*, 10 *New Hamp.* 156.   Justice Story states the principle to be that "as the party himself, during his insanity, could not personally do a valid act, his agent cannot, in virtue of a derivative authority, do an act for and in his name which he could not lawfully do for himself."   From this principle the conclusion inevitably results, that transactions of third parties, which, under the circumstances, would be invalid if had directly with the principal, must be equally invalid though they be done with the agent.   Saving the rights of persons who, before the insanity intervened, became interested in the

power by reason of a consideration advanced, or who, in ignorance of the incapacity, in good faith parted with a consideration of value, relying on the apparent authority of the agent, complete justice will be done, and the law on this subject be made to harmonize.

The charge that if Shandly knew McMahon's condition, the defendants were chargeable with his knowledge, was expressly made conditional on the finding of the jury that Shandly was the agent of the defendants in procuring the delivery of the goods. There was sufficient evidence to justify the leaving of that as a question of fact to the jury. If the jury came to that conclusion on the evidence, the instruction was proper.

*Fourth*—The construction by the judge of the power of attorney given by McMahon to Shandly, the latter part of December, that it only empowered Shandly to transact the ordinary business of the establishment, and did not authorize him to sell out the establishment—to assign the whole property to a creditor in payment of a debt—was correct. If erroneous, the charge as to the effect of the subsequent insanity of McMahon upon the powers of his agent and the finding of the jury must have made on that subject, in order to reach their verdict, would make the error immaterial.

*Fifth*—Exception was taken to the omission of the judge to charge that whether creditors were defrauded or not by what was done by the defendants with the property in question, had nothing to do with this claim by the administrator, although the defendants requested such an instruction.

The judge during the progress of the trial had declared, in the most emphatic manner, that it was entirely immaterial whether there were creditors or not, and that the administrator, as well as the deceased, was concluded from setting up fraud upon creditors in avoidance of his contract, and in the charge as delivered had pointed out clearly and with precision the issues on which the case should turn. His omission to make this further comment on the case could not have misled the jury as to the real matters in controversy.

State, Morris and Essex R. R. Co., pros., v. Hudson Tunnel R. R. Co.

*Sixth*—The books kept by Shandley were merely used by the witness for the purposes of his testimony. The entries were not needed to establish a conversion of the property by the defendants. The evidence was plenary that the property had come to the defendant's possession. If the defence of a purchaser was not sustained, possession under a claim of title was of itself a conversion.

There is no error apparent on the record, and the judgment should be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Depue, Dixon, Reed, Scudder, Van Syckel, Woodhull, Clement, Dodd, Green, Lathrop, Lilly—13.

*For reversal*—None.