**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0418-19T2

FRANCES JACKSON-BILLIE
and CARELL BILLIE, w/h,

     Plaintiffs-Appellants

v.

VIRTUA MEMORIAL HOSPITAL
BURLINGTON COUNTY, INC.,
d/b/a VIRTUA MEMORIAL HOSPITAL,
VIRTUA HEALTH, INC., 200 MARTER
AVENUE OPERTIONS, LLC, d/b/a
POWERBACK REHABILITATION
MOORESTOWN and GENESIS NJ
HOLDINGS, LLC,

     Defendants-Respondents.

_____

Submitted March 30, 2020 – Decided April 27, 2020

Before Judges Fasciale and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2798-18.

Swartz Culleton PC, attorneys for appellants (Matthew E. Gallagher, on the briefs).

Buchanan Ingersoll & Rooney PC, attorneys for respondents 200 Marter Avenue Operations LLC d/b/a Powerback Rehabilitation Moorestown and Genesis NJ Holdings LLC (David Lee Gordon, Philip James Anderson, and David Robert Drake, of counsel and on the brief).

Respondents Virtua Memorial Hospital of Burlington County, Inc. and Virtua Health, Inc. have not filed a brief.

PER CURIAM

Plaintiffs Frances Jackson-Billie (Frances) and Carell Billie appeal a September 13, 2019 order granting defendant 200 Marter Avenue Operations, LLC d/b/a Powerback Rehabilitation Moorestown and Genesis N.J. Holdings, LLC's (Powerback) motion to compel binding arbitration. The judge concluded Frances was competent and understood the arbitration agreement, and that the parties delegated its enforceability to an arbitrator. We agree and affirm.

Powerback is a nursing facility in which Frances stayed during November 2017. On November 13, 2017, Frances signed the arbitration agreement included in her admission paperwork. In their complaint, plaintiffs allege Powerback rendered negligent care to Frances during her stay. Powerback moved to compel arbitration, and plaintiffs opposed the motion, claiming that the agreement was unenforceable because Frances lacked mental capacity to sign it and because it was a contract of adhesion.

A judge denied Powerback's motion without prejudice and ordered limited discovery on the competency issue. The discovery included depositions of Frances and Powerback's representative Cherie Foley, and the exchange of Frances's medical records, including nurses's notes and assessments, a social specialist's report, an occupational therapist's initial evaluation, and Dr. Akhil Sethi's report. Powerback renewed its motion to compel binding arbitration, which led another judge to enter the order under review.

On appeal, plaintiffs argue the limited discovery demonstrated that Frances lacked the mental capacity to bind herself to the terms of the arbitration agreement. Alternatively, they contend that the agreement is unenforceable as a contract of adhesion.

This court applies a de novo standard of review when determining the enforceability of contracts, including arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019). "The enforceability of arbitration provisions is a question of law; therefore, it is one to which [this court] need not give deference to the analysis by the trial [judge.]" Ibid. However, a trial judge's factual findings are reviewed for an abuse of discretion. Cumberland Farms, Inc. v. N.J. Dep't of Envtl. Prot., 447 N.J. Super. 423, 437-38 (App. Div. 2016). "The general rule is that findings by the trial [judge] are binding

on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)).

An agreement to arbitrate is treated like any other contract. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014) (stating "[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law'" (quoting NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011))). "State law governs not only whether the parties formed a contract to arbitrate their disputes, but also whether the parties entered [into] an agreement to delegate the issue of arbitrability to an arbitrator." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016). Incapacitation is a defense in contract law, and plaintiffs have the burden of demonstrating that Frances was incapacitated by clear and convincing evidence. S.T. v. 1515 Broad St., LLC, ___ N.J. ___ (2020) (slip op. at 43); see also Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005).

On the competency issue, the judge found plaintiffs failed to offer any credible evidence demonstrating Frances lacked the mental capacity to understand the agreement. Plaintiffs produced no documentation, such as

medical or expert reports, to establish Frances's incapacitation.[1] Rather, Powerback's expert, Dr. Barry Rovner, analyzed daily neurological assessments, a psychiatrist's evaluation, a physical therapist's notes, an occupational therapist's notes, a social services assessment, and a report of Frances's mental status interview, and concluded—to a reasonable degree of medical certainty—that Frances had "intact decision-making capacity." He therefore opined that she suffered from no mental incapacity that would have interfered with her comprehension of the agreement.

The test for mental capacity, which plaintiffs failed to satisfy, is whether:

> [A] man [or woman] [has] the ability to understand the nature and effect of the act in which he [or she] is engaged, and the business he [or she] is transacting. . . . [I]f the mind be so clouded or perverted by age, disease, or affliction, that he [or she] cannot comprehend the business in which he [or she] is engaging, then the writing is not his [or her] deed.
>
> [Wolkoff v. Villane, 288 N.J. Super. 282, 287 (App. Div. 1996) (sixth and seventh alterations in original) (quoting Eaton v. Eaton, 37 N.J.L. 108, 113 (1874)).]

See also Jennings, 381 N.J. Super. at 227.

---

[1] Plaintiffs submitted a confidential appendix, and, without revealing the contents of that submission, the documentation demonstrated Frances was alert and suffered from no acute mental problems, inattention issues, or signs of disorganized thinking.

The clear and convincing standard requires plaintiffs to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169-70 (2006) (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)). It is evidence "so clear, direct, weighty in terms of quality, and convincing as to cause [the court] to come to a clear conviction of the truth of the precise facts in issue." State v. Campbell, 4f36 N.J. Super. 264, 271 (App. Div. 2014) (quoting Model Jury Charge (Civil), 1.19, "Burden of Proof—Clear and Convincing Evidence" (rev. Aug. 2011)); see also In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014).

As to the second argument—that the arbitration agreement is a contract of adhesion—we agree with the judge that the parties to the agreement delegated that question to the arbitrator. The agreement states: "Any and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center . . . including disputes regarding interpretation and/or enforceability of this Agreement . . . shall be submitted to binding arbitration." In addition, the parties's agreement states: "The [a]rbitrator shall resolve all gateway disputes regarding the enforceability, validity, severability and/or interpretation of this Agreement, as well as resolve

issues involving procedure, admissibility of evidence, discovery or any other issue."

A contract of adhesion is a contract "presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992). A contract may be either procedurally or substantively unconscionable.

Procedural unconscionability arises out of defects in the process by which the contract was formed, and "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting" at the time of the agreement. Delta Funding Corp. v. Harris, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring) (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002)); see also Moore v. Woman To Woman Obstetrics & Gynecology, L.L.C., 416 N.J. Super. 30, 39 (App. Div. 2010). Substantive unconscionability "simply suggests the exchange of obligations so one-sided as to shock the court's conscience." Harris, 189 N.J. at 55 (Zazzali, J., concurring) (quoting Sitogum, 352 N.J. Super. at 565).

The United States Supreme Court recently held "a court may not decide an arbitrability question that the parties have delegated to an arbitrator."

Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 530 (2019).  If there is a valid arbitration agreement, threshold questions of arbitrability must be referred to an arbitrator if the agreement so stipulates by "'clear and unmistakable' evidence."  Id. at 530 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).  The parties expressly agreed that enforceability issues were arbitrable, and this court must enforce the agreement by its terms.  See Goffe, 238 N.J. at 208.  Here, the agreement's delegation language was clear.  The judge did not err, therefore, by compelling arbitration.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION