**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0030-24

YIGAL GOLDBERG and
YAFET GOLDBERG,

      Plaintiffs-Respondents,

v.

JEWISH HOME FOR
REHABILITATION AND
NURSING LLC,

      Defendant-Appellant.

_____

Argued June 17, 2025 – Decided June 26, 2025

Before Judges Sabatino and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1180-24.

Kyle C. Allen argued the cause for appellant (Lewis Brisbois Bisgaard & Smith, LLP, attorneys; Kyle C. Allen and Christian R. Prisco, on the briefs).

Margo R. Zemel (Margo R. Zemel, PC) argued the cause for respondents.

PER CURIAM

Defendant Jewish Home for Rehabilitation and Nursing LLC appeals from an order denying its motion to dismiss the complaint of plaintiffs Yigal Goldberg and Yafet Goldberg[1] and to compel arbitration of their claims. Because the trial court decided disputed factual issues without conducting an evidentiary hearing, we vacate the order and remand for proceedings consistent with this opinion.

I.

On May 28, 2024, plaintiffs filed a complaint in the Law Division, alleging defendant had been negligent and committed malpractice in its care of Yigal while he was a resident at its rehabilitation facility. Plaintiffs alleged that in April 2022, Yigal had "sustained horrific injuries in a pedestrian/vehicular accident in which he was targeted for being Jewish." According to plaintiffs, after Yigal had undergone "numerous surgeries," he was transferred from a hospital to defendant's facility in April 2023, with instructions he "was to engage in non-weight-bearing activity only due to severe injury to his lower extremities." Plaintiffs claim Yigal was injured as a result of defendant's negligence when "he was made to stand weight-bearing—directly against doctor's orders" while at defendant's facility.

---

[1] Because of their shared last name, we refer to plaintiffs, who are married to each other, by their first names for purposes of clarity and mean no disrespect in doing so.

A-0030-24

On June 27, 2024, defendant moved pursuant to Rule 4:6-2(e) to dismiss the complaint and to compel arbitration. In support of its motion, defendant submitted a copy of an "Admission Agreement" purportedly between defendant, as the "Facility," and Yigal, as the "Resident." Paragraph 6(xv) of the agreement was entitled "Alternate Dispute Resolution" (ADR) and referenced an attached ADR agreement. That paragraph stated "if voluntarily entered into by the Resident and Facility, [the ADR agreement] provides an alternative means to dispute resolution, except for payment disputes. Executing the ADR agreement is not a precondition for either treatment or admission to the Facility."

The attached ADR agreement, which was dated April 28, 2022, contained the following provision:

> Scope of ADR Agreement. Any and all claims or controversies, with the exception of payment disputes, arising out of or in any way relating to this ADR Agreement ("Agreement") or the Resident's stay at the Facility including disputes regarding interpretation of this Agreement . . . shall be submitted to ADR as described in this Agreement. The parties understand that this Agreement contains provisions for both mediation and binding arbitration. If the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration. Binding arbitration means that the parties are waiving their right to a trial, including their right to a jury trial, their right to trial by a judge and their right to appeal the decision of the arbitrator(s) except as provided for under applicable state and/or federal laws

A-0030-24

governing the arbitration.  This Agreement includes claims against the Facility, its employees, its medical director, agents, officers or directors of the parent corporations, affiliates or subsidiaries of the Facility . . . to the extent that the Resident seeks to hold the Facility liable for any act or omission of the Medical Director in his/her capacity as Medical Director, as well as any claims against employees, agents, officers or directors of the parent corporations, affiliates or subsidiaries of the Facility.

Another provision of the ADR agreement discusses its voluntary nature:

ADR is Voluntary.  The Resident, or his or her legal guardian, his or her agent, or authorized Power of Attorney understand that other local nursing home's agreements may not contain an alternative dispute resolution provision.  The parties agree that the cost-effectiveness, time-efficiency and mutual agreement to accept alternative dispute resolution methods as binding as stated above are good and sufficient consideration for the acceptance and enforcement of this Agreement.

The last numbered paragraph of the ADR agreement was entitled "Resident's Understanding of Agreement" and provided:

The Resident, the Legal Representative, or the Resident's authorized representative, has read this Agreement in its entirety, and understands the language in which it is written.  If this Agreement has been read on behalf of the Resident by an authorized representative or agent of the Resident, the representative or agent has explained to the Resident, to the extent of the Resident's capability to understand such explanation, the nature of this Agreement and its essential terms.  The Resident understands that

4

(A) he/she has the right to seek legal counsel concerning this Agreement, (B) the execution of this Agreement is not a precondition to admission, expedited admission or the furnishing of medical services to the Resident by the Facility, and (C) this ADR Agreement may be revoked by providing notice to the Facility from the Resident within thirty (30) days of signature. If not revoked within thirty (30) days, this Agreement shall remain in effect for all care and services rendered at the Facility, even if such care and services are rendered following the Resident's discharge and readmission to the Facility. (D) Nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law or any other Resident grievance to the appropriate administrative, regulatory or law enforcement agency.

The ADR agreement contained the following language in bold above the parties' signature lines: "THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ THE AGREEMENT IN ITS ENTIRETY BEFORE SIGNING." Below the signature lines, an X mark indicated a "Facility representative . . . presented the ADR to the Resident and/or Legal Representative." A signature appears on the "Signature of Resident" line, next to Yigal's printed name as Resident.

In opposing the motion, plaintiffs did not assert their claim fell outside the scope of the ADR agreement nor did they contend the language of the agreement failed to meet the "plain language" standard set by the Supreme Court in Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 444 (2014). Instead,

plaintiffs asserted Yigal "was not competent to enter into the Arbitration Agreement with . . . [d]efendant," citing his "severe injuries," his "heavily medicated" state, and his "lifelong dyslexia."

In support of that assertion, plaintiffs submitted their certifications and a copy of Yigal's completed "Form N-648, Medical Certification for Disability Exceptions," a United States Citizenship and Immigration Services form. On its face Form N-648 indicates it is intended for a citizenship applicant "who seeks an exception to the English and/or civics requirements due to a physical or developmental disability or mental impairment that has lasted, or is expected to last, [twelve] months or more."

According to the information contained on the form, a licensed psychologist completed Yigal's form on July 5, 2018. She diagnosed Yigal as having a cognitive disorder, reading disorder, disorder of written expression, and social phobia. She described his disabilities as follows:

> [Yigal] has severe, biologically[-]based and hereditary learning disabilities and inadequate memory skills, complicated by psychiatric illness. The latter manifests itself in test taking anxiety (social phobia) and depression. He cannot read or write in either English or in Hebrew beyond a few rudimentary words. He has extreme difficulty and anxiety when taking a test and exhibits a marked and persistent fear of performance situations. His short[-]term memory is inadequate causing him to have difficulty in remembering things

6

said to him. This memory deficiency and anxiety have been evident from a very early age whenever he would take examinations or tests. As a result of these disorders, he is unable to learn or remember United States history or civics.

On the form, an interpreter certified he was fluent in English and Hebrew and had "translated all communications" between the psychologist and Yigal.

In his certification, Yigal asserted he was alone when he was transported to defendant's facility and was "in horrible physical and emotional shape" and "heavily medicated on Oxycodone." According to Yigal, he had no recollection of signing paperwork for defendant and obviously "was in no condition to read or understand anything that [he] supposedly signed." He contended he could not "make decisions" or "understand things [he] was told." He denied he had been advised to read documents he was signing or that he was waiving his right to go to court. He also asserted he would not have signed the agreement had he understood or been told that by signing it, he was waiving his right to go to court. In addition, Yigal certified he had "a significant reading disability" due to dyslexia.

Yafet certified Yigal had dyslexia and that she "handled all document review and signings on [his] behalf." She denied defendant had told her or Yigal he needed to sign paperwork or had discussed the documents with her. She

7

A-0030-24

asserted "Yigal could not make decisions and could not understand what he was being told."

In reply, defendant submitted records from its facility about Yigal, contending information in those records contradicted plaintiffs' assertions about Yigal's competency. Defendant asserted the records demonstrated English was Yigal's primary language, his language skills were intact, and he was "able to make his needs known to staff on the unit." The records included a May 9, 2022 evaluation by a psychologist who had found Yigal was "fully oriented," his memory was "good" and "intact," and his score on an assessment tool indicated "no likely cognitive impairment." A social worker who completed a "pre-admission screening and resident review" concluded Yigal did not have a major mental illness, a significant impairment, or any intellectual disability.

After hearing argument, the court on August 2, 2024, entered an order denying the motion.[2] In an attached statement of reasons, the court reviewed the information contained in Yigal's certification and the Form N-648, including the opinions of the psychologist who had completed the form. The court acknowledged defendant's reply brief but made no mention of the records defendant had submitted or the evaluations contained in those records. The

---

[2] The order was incorrectly dated August 6, 2024.

8

court held, "[u]nder these particular circumstances, [d]efendant . . . has not met [its] burden of proving that [p]laintiff Yigal Goldberg assented to 'Jewish Home for Rehabilitation & Nursing Alternate [D]ispute Resolution Agreement Between Resident and Facility.'"

This appeal followed.

## II.

We review a trial court's denial of a motion to dismiss de novo. AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 310 (2024). Because the enforceability of an arbitration agreement is a question of law, we also review de novo a trial court's order granting or denying a motion to compel arbitration. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); Lahoud v. Anthony & Sylvan Corp., 481 N.J. Super. 29, 40 (App. Div. 2025). In conducting that review, we owe "no special deference" to the legal determinations of the trial court. AC Ocean Walk, 256 N.J. at 310; Skuse, 244 N.J. at 46. When considering orders deciding motions to compel arbitration, "we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Lahoud, 481 N.J. Super. at 40-41 (quoting Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "That preference, 'however, is not

without limits.'" Id. at 41 (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001)).

Because they are contracts, "[a]rbitration agreements are subject to customary contract law principles." Ibid.; see also Atalese, 219 N.J. at 442 ("[a]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" (quoting NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011))). "Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified." Lahoud, 481 N.J. Super. at 41. In opposition to defendant's motion, plaintiffs did not challenge the clarity of the arbitration agreement at issue nor its identification of the legal rights being waived. Instead, they asserted Yigal lacked the mental capacity to enter into this particular contract.[3]

---

[3] Although their focus remains on Yigal's allegedly "compromised mental state," plaintiffs in their appellate brief seem at times to challenge the clarity of the arbitration agreement at issue. Because plaintiffs did not make that argument in the trial court, we do not consider it on appeal. See Alloco v. Ocean Beach & Bay Club, 456 N.J. Super. 124, 145 (App. Div. 2018) (applying "well-settled" principle that appellate court will not consider an issue that was not raised before the trial court.); State v. Robinson, 200 N.J. 1, 19 (2009) ("[t]he jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves").

A-0030-24

Arbitration agreements can be "invalidated by generally applicable contract defenses" as long as those defenses do not discriminate against arbitration. Arafa v. Health Express Corp., 243 N.J. 147, 165 (2020) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted); see also Atalese, 219 N.J. at 441 (acknowledging contract defenses apply to arbitration agreements). Lack of capacity is a defense in contract law. If a party to a contract does not have "the mental capacity to comprehend and understand, there is not capacity to make a valid contract." Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (quoting Wolkoff v. Villane, 288 N.J. Super. 282, 287 (App. Div. 1996)) (internal quotation marks omitted). The party seeking to set aside an agreement "has the burden of proving his [or her] incapacity or incompetence to contract . . . ." Ibid.

To prove incapacity, the party must show by clear and convincing evidence he or she "was without understanding of the terms of the agreement" or was "otherwise unable to appreciate the nature of the business he [or she] was transacting." Id. at 230; S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 281 (2020) ("[a] finding of incapacity must be made by clear and convincing evidence"); see also Pivnick v. Beck, 326 N.J. Super. 474, 483 (App. Div. 1999) ("reformation of written contracts requires clear and convincing proof because

it imposes a result on the contracting parties that conflicts with the intent expressed in the language of their contract"). "'Clear and convincing evidence' is defined as the 'standard of evidence which leaves no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" Rivera v. Valley Hosp., Inc., 252 N.J. 1, 17 (2022) (quoting N.J.S.A. 2A:15-5.10).

The trial court correctly retained jurisdiction to determine whether plaintiffs could prove their incapacity defense. See Muhammad v. Cnty. Bank of Rehoboth Beach, Del., 189 N.J. 1, 12 (2006) (finding "'whether the parties have a valid arbitration agreement at all' is a 'gateway' question that requires judicial resolution" (quoting Green Tree Fin. Corp. v. Bazzle, 539, U.S. 444, 452 (2003) (plurality opinion))); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cantone Research, Inc., 427 N.J. Super. 45, 63 (App. Div. 2012) (finding the court had the authority to decide "gateway issues, such as whether the parties are bound by an arbitration clause or whether a binding contract applies to a particular controversy"). But the court erred in deciding that issue without conducting an evidentiary hearing when material facts clearly were in dispute.

"[W]e have repeatedly emphasized that trial judges cannot resolve material factual disputes upon conflicting affidavits and certifications."

12

Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div. 1995); see also McGory v. SLS Landscaping, 463 N.J. Super. 437, 454 (App. Div. 2020) (faulting judge for making "findings of fact . . . based solely on the judge's interpretation of petitioner's affidavit . . . ."). Nevertheless, that is what the court did here. Moreover, "[w]here there are material factual issues . . . concerning a plaintiff's mental state, the court should hold an evidentiary hearing." Giannakopoulos v. Mid State Mall, 438 N.J. Super. 595, 612 (App. Div. 2014).

Given the clear showing of genuinely disputed issues of material fact, the court erred in deciding and denying the motion without first conducting a plenary hearing to permit the parties to develop an evidentiary record on which the court properly could resolve those disputed issues. Accordingly, we vacate the August 2, 2024 order and remand the case for proceedings consistent with this opinion. Those proceedings must include an evidentiary hearing on plaintiffs' contract defense of incapacity and may include before that hearing any discovery the court within its discretion deems appropriate to address that issue.

In remanding the case, we take no position on the trial court's determination of capacity. We note defendant moved to dismiss the case and compel arbitration. In the event the court compels arbitration, we remind the

A-0030-24

parties and the court that the appropriate procedure is to stay the case pending completion of the arbitration and not to dismiss it. See Lahoud, 481 N.J. Super. at 48 (finding the trial court had correctly compelled arbitration but erred in dismissing the action instead of staying it pending the arbitration (citing 9 U.S.C. § 3)); Kleine v. Emeritus at Emerson, 445 N.J. Super. 545, 554 n.13 (App. Div. 2016) (finding that had the case been subject to arbitration, "the claims against defendant should only have been stayed, not dismissed" (citing N.J.S.A. 2A:23B-7(g))).

Vacated and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

14